UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| JEREMY WATSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:24-cv-1602-GMB |
| ) | |
| STATE FARM FIRE AND ) | |
| CASUALTY COMPANY, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION AND ORDER

On October 15, 2024, Plaintiff Jeremy Watson filed a complaint in the Circuit Court of Calhoun County, Alabama against State Farm Fire and Casualty Company. Doc. 1-1 at 7–12. State Farm timely removed the case to the Northern District of Alabama on the basis of diversity jurisdiction. Doc. 1. Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of a United States Magistrate Judge. Doc. 10. Before the court is Watson's Motion to Remand (Doc. 5), which is due to be denied.

## I.  STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994). Accordingly, this court is "empowered to hear only those

cases within the judicial power of the United States as defined by Article III of the Constitution or otherwise authorized by Congress." *Taylor v. Appleton*, 30 F.3d 1365, 1367 (11th Cir. 1994) (citations omitted). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). When the parties disagree on the court's jurisdiction, doubts are to be resolved in favor of returning the matter to state court on a properly submitted motion to remand. *Burns*, 31 F.3d at 1095.

## II. STATEMENT OF FACTS

According to the allegations of the complaint, Watson had an insurance policy with State Farm covering his residence in Anniston "which afforded various types of coverage including coverage for damage to dwelling, other structures, personal property, and loss of use." Doc. 1-1 at 8. The roof of Watson's home suffered damage in a storm while the policy was in effect, and he gave State Farm notice of the loss. Doc. 1-1 at 8.

Watson contracted with Alabama Premier Roofing Construction Company to repair the roof. Doc. 1-1 at 8. State Farm, however, "refused and continues to refuse to pay either part of or all of" Watson's claims. Doc. 1-1 at 8. In doing so, State Farm "engaged in an act of bad faith in denying full payment . . . without any legitimate or debatable reason or has failed to investigate the existence of a

legitimate or debatable reason in denying the Plaintiff's claims for coverage as called for by the insurance policy." Doc. 1-1 at 10.  Watson also claims that State Farm acted "oppressively, maliciously, and intentionally, in an effort to deny the Plaintiff full insurance benefits" and that this conduct "was part of a plan, design, scheme, intent, pattern, or practice of denying in bad faith the Plaintiff's claims and those of similarly situated persons." Doc. 1-1 at 10.

Based on these facts, Watson states claims for breach of contract and bad faith against State Farm.  He seeks compensatory damages, court costs, attorney's fees, and reasonable expenses for the breach of contract claim, plus damages for the bad faith claim "including but not limited to damage to the building, contents, loss of use, interest allowed by law, and reasonable attorney's fees and costs pursuant to Alabama statutes and/or other Alabama law." Doc. 1-1 at 9 & 10.  There is no explicit request for punitive damages and the complaint's *ad damnum* clauses do not specify the amount of damages Watson is seeking. Doc. 1-1 at 9 & 10.  However, in the "Applicable Facts" section, the complaint states that the breach of contract claim alone is worth "in excess of Thirty Thousand Dollars ($30,000) exclusive of interest, costs, and attorney's fees." Doc. 1-1 at 8.

Before filing the complaint, Watson's lawyer sent a demand letter to State Farm. Doc. 5-2.  The letter makes a demand for a total payment of $44,664.62, which includes the cost of repair and $10,000 in attorney's fees. Doc. 5-2 at 2.  Watson's

counsel attached a detailed estimate totaling $34,664.62 for the cost of the repairs to the roof. Doc. 5-2 at 17–23.  The letter stated that the demand would expire in 15 business days. Doc. 5-2 at 2.

Watson also filed an affidavit with his motion to remand dated December 3, 2024. Doc. 5-1.  In it, Watson states that "[t]he amount in controversy does not exceed $75,000.00, exclusive of interest and costs." Doc. 5-1 at 2.  He also "agrees not to accept any judgment in excess of $75,000.00" and stipulates to a remittitur if the judgment exceeds $75,000.00. Doc. 5-2 at 2.

### III.  DISCUSSION

A defendant may remove a civil action "originally filed in a state court to the federal district court when the district court has original jurisdiction to consider the case." *Lost Mtn. Homeowners Assoc., Inc. v. Rice*, 248 F. App'x 114, 115 (11th Cir. 2007).  "Original jurisdiction requires diversity of the parties or the existence of a federal question." *Id.*  State Farm invokes only this court's diversity jurisdiction in its notice of removal (Doc. 1 at 2–7), and no federal question appears on the face of the complaint.

Diversity jurisdiction exists when (1) the action is between citizens of different states and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a).  It is undisputed that there is complete diversity of citizenship.  Watson, however, disputes that the amount in controversy

exceeds $75,000. Doc. 5.

Even when the complaint does not plead a specific amount of damages, removal is proper if it is facially apparent from the complaint that the amount in controversy exceeds $75,000. *Williams v. Best Buy Co.*, 269 F.3d 1316, 1319 (11th Cir. 2001). In this analysis, the court "may make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent" that the amount in controversy has been met. *Jones v. Novartis Pharms. Co.*, 952 F. Supp. 2d 1277, 1282 (N.D. Ala. 2013) (quoting *Roe v. Michelin N. Am., Inc.*, 613 F. 3d at 1061–62). If it is not facially apparent from the complaint that the amount in controversy exceeds $75,000, then the court should look to the notice of removal and any other evidence relevant to the amount in controversy at the time of removal. *Id.* at 1283. When a non-removing party seeks remand, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 88 (2014) (citing 28 U.S.C. § 1446(c)(2)(B)).

A "removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it." *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010). Indeed, "[t]he law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than

we all do in everyday life." *Id.* The court need not "suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount." *Id.* at 770 (quoting *Roe*, 637 F. Supp. 2d at 999. Importantly, the court's "analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." *Id.* at 751.

Here, it is not facially apparent from the face of the complaint that the amount in controversy exceeds $75,000 since the complaint does not define the total amount of damages Watson seeks. While Watson values the breach of contract claim "in excess of Thirty Thousand Dollars ($30,000) exclusive of interest, costs, and attorney's fees," Doc. 1-1 at 7 & 8, he does not assign any specific value to the claim for bad faith. The complaint also omits any estimate of the value for the other requested damage components such as compensation for the contents of the building or loss of use. The court therefore will consider the notice of removal and the other evidence in the record relevant to the amount in controversy. *See Jones*, 952 F. Supp. 2d at 1283.

The notice of removal relies on the following evidence to establish the amount in controversy: (1) Watson's allegation that the breach of contract claim is worth more than $30,000; (2) his request for property damage, loss of use, personal property damage, interest, attorney's fees, and other costs; (3) his claim for bad faith, for which Alabama law authorizes the recovery of punitive damages; and (4) the

coverage limits on the policy, which exceed $75,000. Doc. 1 at 5–7. The court agrees that this evidence meets the jurisdictional threshold.

Watson's request for "in excess of $30,000" (Doc. 1-1 at 7 & 8) for breach of contract, when combined with his claim for bad faith, tends to show that the complaint places more than $75,000 in controversy even without the other categories of potential damages. The addition of the bad faith claim and factual allegations of "oppressive[], malicious[], and intentional" conduct (Doc. 1-1 at 10) on the part of State Farm put punitive damages on the table even if the complaint does not include the phrase "punitive damages." *See Gulf Atl. Life Ins. Co. v. Barnes*, 405 So. 2d 916, 925 (Ala. 1981) (allowing punitive damages for bad faith claims when the insurer acts with malice, willfulness, or wanton and reckless disregard of the insured's rights). And the Eleventh Circuit requires this court to consider the availability of punitive damages in assessing the amount in controversy. *Rae v. Perry*, 392 F. App'x 753, 755 (11th Cir. 2010) ("Punitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases.").

In addition, Watson seeks compensation for various damages other than the roof repair, including the contents of his home, his loss of its use, interest, and attorney's fees. Doc. 1-1 at 10. The claims in the complaint therefore lead to the reasonable inference that Watson's lawsuit places a much larger amount in controversy than the cost to repair the roof. And the large coverage limits reinforce

7

that the roof repair, other damages, and punitive exposure place well more than $75,000 in controversy. *See* Doc. 1-2 at 6 (listing the policy limits for damages to the dwelling ($201,800), other structures ($20,180), personal property ($151,350), and for loss of use ($60,540)).

In reaching this conclusion, the court rejects Watson's argument that his pre-suit settlement demand letter fixes the amount in controversy below $75,000. Doc. 5 at 8–9; Docs. 5-1 & 5-2. A "settlement offer . . . counts for something," but what it counts for depends on the circumstances. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1097 (11th Cir. 1994). Most settlement offers are entitled to little weight in assessing the amount in controversy. *Jackson v. Select Portfolio Serv., Inc.*, 651 F. Supp. 2d 1279, 1281 (S.D. Ala. 2009). On the other hand, settlement offers incorporating "specific information . . . to support [the plaintiff's] claim for damages" are entitled to more weight because they suggest that the plaintiff is "offering a reasonable assessment of the value of [her] claim." *Golden Apple Mgmt. Co. v. GEAC Comps., Inc.*, 990 F. Supp. 1364, 1368 (M.D. Ala. 1998); *see also Hardy v. Jim Walter Homes, Inc.*, 2007 WL 1889896 at *6 n.11 (S.D. Ala. 2007).

The court assigns little weight to Watson's demand letter in determining the amount in controversy. While it does contain a detailed estimate of the cost to repair his roof, it ignores all other categories of damages requested in the complaint. Watson also sent the demand letter before he filed the complaint and explicitly stated

that the demand expired before he filed suit. He then prepared and filed the complaint, which is broader than an action for simple breach of contract. The "court's analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal," *Pretka, Inc.*, 608 F.3d at 751, not at the time Watson sent his pre-suit demand letter.

Likewise, Watson's affidavit filed after the removal attempting to limit his damages to less than $75,000 does not aid the court in determining the amount in controversy at the time of removal. The "jurisdictional facts that support removal must be judged at the time of the removal, and any post-petition affidavits are allowable only if relevant to that period of time." *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 949 (11th Cir. 2000) (internal quotation marks omitted). Here, Watson stated on December 3, 2024—six weeks after filing his complaint and two weeks after State Farm removed it—that the amount in controversy is less than $75,000 and promised not to accept more than $75,000. Doc. 5-1 at 2. This post-removal affidavit, however, does not prove the amount in controversy at the time of removal. Instead, the affidavit is akin to a "post-removal waiver of a certain amount of damages in an effort to deprive this court of jurisdiction." *Bankhead v. Am. Suzuki Motor Corp.*, 529 F. Supp. 2d 1329, 1334 (M.D. Ala. 2008). While the affidavit could limit Watson's recovery going forward, it does not cap the amount in controversy at the time of removal. "Where, as here, 'the plaintiff after removal . . .

by affidavit . . . reduces the claim below the requisite amount, this does not deprive the district court of jurisdiction.'" *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292 (1938)).  Waston's affidavit thus is not relevant to the amount in controversy when the case was removed, *see id.*, and on the whole the court concludes that State Farm has established by a preponderance of the evidence that the amount in controversy in this lawsuit exceeded $75,000 at the time of removal.

### IV. CONCLUSION

For these reasons, it is ORDERED that Plaintiff's Motion to Remand (Doc. 5) is DENIED.

The parties are further ORDERED to conduct a conference pursuant to Federal Rule of Civil Procedure 26(f) within the next **14 days.**  During the Rule 26(f) conference, the parties shall discuss at least the following topics:

- the nature and basis of the claims and defenses and the possibility of a prompt settlement or resolution of the case through formal mediation or informal settlement negotiations;

- a proposed discovery plan, including deadlines for the matters addressed in sub-paragraphs (1) through (4) of Rule 26(f) and a protocol to govern the search and production of electronically stored information; and

- the need for a protective order for disclosure of protected health

information.[1]

If the parties are unable to agree upon a date, time, or place for the Rule 26(f) conference, the parties are ORDERED to file a joint notice with the court.

Additionally, unless otherwise ordered, the parties shall exchange the initial disclosures required under Rule 26(a)(1) no later than **7 days** before the meeting to facilitate discussion during the discovery conference.  Within **7 days** of the Rule 26(f) meeting, the parties must file a joint report of their planning meeting.  The report should include a brief description of the nature of the case; an indication of the parties' assessment of the complexity of the case; proposed deadlines for amending the pleadings, joining additional parties, completing discovery, and filing dispositive motions; and a statement regarding the parties' initial interest in alternative dispute resolution.  If the parties disagree about any item, the parties' must set out their respective positions in separate paragraphs.

DONE and ORDERED on April 7, 2025.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE

---

[1] If the parties agree to the entry of the court's standard HIPAA protective order, they may indicate this agreement in the joint report of planning meeting.  If the parties require a HIPAA order tailored to the case, the moving party should email a proposed draft order to the chambers email address and file an appropriate motion.